UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

FARDIN SHARIFIPOUR,

          Petitioner,

   v.

U.S. DEPARTMENT OF HOMELAND
SECURITY;
U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT;
MARKWAYNE MULLIN, *in his official
capacity as Secretary, U.S. Department
of Homeland Security*;
TODD M. LYONS, *in his official
capacity as Acting Director of ICE*;
JOSEPH E. FREDEN, *in his official
capacity as ICE Deputy Field Office
Director, Buffalo Federal Detention
Facility*;
PHILIP L. RHONEY, *in his official
capacity as Acting Deputy Field Office
Director, Buffalo Field Office, U.S.
Immigration and Customs Enforcement*;
TAMMY MARICH, *in her official
capacity as Acting Deputy Field Office
Director, Buffalo Field Office, U.S.
Immigration and Customs Enforcement*,

          Respondents.

26-CV-457 (JLS)

_____

## DECISION AND ORDER
## (PRELIMINARY INJUNCTION)

Before the Court is Petitioner's motion for a preliminary injunction. Dkt. 6.

For the following reasons, the motion is DENIED.

## BACKGROUND

On March 12, 2026, Petitioner Fardin Sharifipour, a native and citizen of Afghanistan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention in the custody of the United States Department of Homeland Security ("DHS"). Dkt. 1.[1] Petitioner is subject to a final order of removal—but he "is not challenging the validity of his removal order." Dkt. 11 at 2 ¶ 3.[2] Rather, he contends that his detention pursuant to 8 U.S.C. 1231(a)(6) violates his rights under the Due Process Cause of the Fifth Amendment because "there is no significant likelihood of his removal in the reasonably foreseeable future." *See id.* at 17 ¶ 57. Respondents' response thereto is forthcoming.

Petitioner was taken into DHS custody on December 8, 2025. *Id.* at 3 ¶ 4. Respondents "first detained" Petitioner "at the county jail, then at the Buffalo Federal Detention Facility ("BFDF")." *Id.* at 3 ¶ 5. Petitioner was "kept at the BFDF until March 13, 2026, after which he was transferred to the [Miami Correctional Facility ("MCF")] in Indiana." *Id.* He has been "detained at MCF ever since." *Id.*[3]

---

[1] Petitioner filed an Amended Petition on April 1, 2026, which is now the operative petition. *See* Dkt. 11.

[2] Page numbers refer to the CM/ECF generated numbering in the header of each page.

[3] According to Petitioner, he was previously held "at BFDF for seven weeks," after which "ICE concluded that it could not remove [him] to Afghanistan because it was unable to obtain travel documents." *Id.* at 2 ¶ 3. ICE "subsequently released [Petitioner] from civil immigration detention under supervised release." *Id.*

On March 27, 2026, Petitioner filed a motion for preliminary injunction ("PI"). Dkt. 6. He seeks an order requiring Respondents to: (1) provide notice to Petitioner's counsel 72 business hours in advance any transfer of Petitioner; and (2) provide Petitioner with access to three legal calls per week. *See* Dkt. 6-1 at 1. Respondents opposed the motion, Dkt. 8, and Petitioner replied. Dkt. 10.

## DISCUSSION

### A.    Legal Standard

To obtain a preliminary injunction, a moving party must establish: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) that the public interest is served by an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *See also Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) ("The default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest'") (quoting *Winter*, 555 U.S. at 20) (internal quotation marks omitted)).

### B.    Analysis

A preliminary injunction is not warranted. As an initial matter, Petitioner's motion improperly seeks relief beyond the scope of his habeas petition. A "party moving for a preliminary injunction must necessarily establish a relationship

between the injury claimed in the party's motion and the conduct asserted" in the operative pleading. *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). This is "because '[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint.'" *Id.* (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)). Indeed, a "court's equitable power lies only over the merits of the case or controversy before it." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). And when a litigant "seeks injunctive relief based on claims not pled in the [petition], the court does not have the authority to issue an injunction." *Id.*

Accordingly, courts routinely decline to enjoin preliminarily conduct unrelated to relief sought, or conduct alleged, in the underlying pleading. *See, e.g.,* Devose, 42 F.3d at 471 (preliminary injunctive relief not warranted where the "motion for temporary relief ha[d] nothing to do with preserving the district court's decision-making power over the merits of" the underlying claims"); *Torres v. UConn Health*, No. 3:17-CV-00325 (SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (explaining that, "[p]reliminary injunctive relief is available only to redress injuries that are related to the conduct giving rise to the complaint") (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)); *Crichlow v. Fischer*, No. 9:17-CV-00194 (TJM) (TWD), 2017 WL 6459512, at *1 (N.D.N.Y. Dec. 18, 2017) (explaining

4

that a plaintiff "cannot amend the . . . Complaint by bringing a motion for a preliminary injunction complaining about subsequent conduct" and denying motion for preliminary injunction "without prejudice to being asserted in a new action complaining about the conduct underlying the motion").

Here, Petitioner seeks preliminary injunctive relief that is wholly unrelated to his allegations in the Amended Petition. The Amended Petition does not seek a stay of transfer/removal or telephone privileges.[4] Rather, it sets forth one cause of action alleging that Petitioner's detention under Section 1231(a)(1) is unconstitutionally prolonged. *See generally* Dkt. 11.[5] The Court, therefore, cannot order the preliminary injunctive relief Petitioner seeks. *See Hendricks v. Hazzard,* 2013 U.S. Dist. LEXIS 82554, *9-10 (S.D. Oh. June 12, 2013) (A "motion for a . . . preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable").

In any event, Petitioner's motion must be denied for the additional reasons discussed below.

---

[4] In fact, the amended version of the petition *removed* a request that the Court "[e]njoin [Petitioner's] removal or transfer outside the jurisdiction of this Court and the United States pending its adjudication of this petition." *Compare* Dkt. 1 at 46, *with* Dkt. 11 at 18.

[5] Petitioner acknowledged that his intention in amending the petition was "to remove all claims for relief except Count Ten, alleging that his prolonged detention is contrary to *Zadvydas*." Dkt. 6-1 at 12 n.2.

1. <u>Request for Stay of Transfer or Removal</u>

Petitioner seeks a preliminary injunction requiring Respondents to stay removal or transfer among detention facilities without 72 hours notice. *See, e.g.,* Dkt. 6-1 at 1. This request is denied.

As to the request to stay *removal*, 8 U.S.C. § 1252(g) provides:

> [N]otwithstanding any other provision of law (statutory or nonstatutory), including any . . . habeas corpus provision . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . .

8 U.S.C. § 1252(g). The Supreme Court has limited Section 1252(g) to the "three discrete actions that the Attorney General may take" set forth explicitly in the statute: "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)).

The Second Circuit has held that, based on Section 1252's jurisdiction-stripping provisions, "district court[s] lack[] jurisdiction over . . . indirect challenge[s] to an order of removal," as well as direct challenges. *Delgado v. Quarantillo*, 643 F.3d 52, 53 (2d Cir. 2011). *See also id.* at 55. The question whether a lawsuit against immigration authorities challenges a removal order "turn[s] on the substance of the relief" sought. *Id.*

Accordingly, to the extent Petitioner asks the Court to enjoin Respondents from removing him from the United States, that is a clear request to interfere with

how Respondents "execute removal orders." *See* 8 U.S.C. § 1252(g). The statute, therefore, bars this Court from issuing such an order.

As to the request related to *transfer* among detention facilities, the relevant statute provides: "The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). Courts have recognized that this provision "provides DHS with broad authority to decide where an alien is detained." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 106 (W.D.N.Y. 2019).[6] *See also Dorval v. Barr*, 414 F. Supp. 3d 386, 396 (W.D.N.Y. 2019) (citing Section 1231(g)(1) and concluding that, because the court retained jurisdiction over the habeas petition, there was "no need to interfere with DHS's authority to arrange for appropriate places of detention under 8 U.S.C. § 1231(g)(1)") (citation modified). *Courts* should not be micro-managing this issue.[7]

---

[6] The Court recognizes that the *Singh* court has since taken a different approach to the issue. *See Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 585 (W.D.N.Y. 2025). Nevertheless, this Court agrees with *Singh*.

[7] Moreover, any transfer of Petitioner does not affect the Court's jurisdiction over the Petition because Petitioner was in custody in this District when the petition was filed. *See* Dkt. 1 at 2 ¶ 1. *See also Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (recognizing that a court acquires jurisdiction over a habeas action if the petitioner "properly name[s] [his] immediate custodian and file[s] in the district of confinement"); *Schiselman v. U.S. Parole Comm'n*, 858 F.2d 1232, 1235 n.3 (7th Cir. 1988) (petitioner's "transfer to a prison outside of this circuit and the accompanying custodial change d[id] not affect [the court's] jurisdiction").

The Court, therefore, denies Petitioner's request.[8]

### 2. Request for Telephone Privileges

Petitioner also asks this Court to order Respondents to provide him with access to three calls with his lawyer per week. *See, e.g.,* Dkt. 6-1 at 1. That request, too, is denied.

Courts "must preserve prison officials' freedom to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape." *Proctor v. LeClaire*, 846 F.3d 597, 610 (2d Cir. 2017) (internal quotation marks and citation omitted). Prison "administrators[,] therefore[,] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 521 (1979)). *See also Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (noting that federal courts "are not to micromanage state prisons"). Except in "extreme circumstances," the "federal courts are reluctant to interfere" with matters of "prison administration and management." *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971). Federal courts, therefore, should not allow themselves to become "enmeshed in the minutiae of prison operations." *Lewis v. Casey*, 518 U.S. 343, 362 (1996) (quoting *Bell*, 441 U.S. at 562).

---

[8] The Court recognizes that it has jurisdiction over Petitioner's transfer-related requests, *see Ozturk v. Hyde*, 136 F.4th 382, 395–96 (2d Cir. 2025), and has considered them. After doing so, the Court declines to interfere with Respondents' authority to "arrange for appropriate places of detention." *See* 8 U.S.C. § 1231(g)(1).

Here, Petitioner requests that this Court manage phone calls at MCF—a state prison in Indiana. The Court declines to do so. To afford Petitioner the relief he seeks, the Court would have to order MCF to arrange for Petitioner's movement within the facility multiple times per week and provide telephone access. And providing Petitioner with additional telephone access would likely necessitate alterations in arrangements made for other detainees as well. This is precisely the sort of "enmesh[ment] in the minutiae of prison operations" that federal courts ought to avoid. *See Lewis*, 518 U.S. at 362.

In any event, Petitioner acknowledges that he *has* been permitted to speak with his attorney since being transferred to MCF. *See* Dkt. 6-1 at 12. Moreover, in this Court's judgment, the issues presented in this case do not require multiple discussions with counsel per week. Petitioner identifies no "extreme circumstances" warranting Court management of phone calls and movement within his facility.

### 3. Preliminary Injunction Factors

Finally, all of the preliminary injunction factors favor Respondents on this record. First, Petitioner has not established a likelihood of success on the merits. Petitioner is subject to a final order of removal and, therefore, is detained pursuant to 8 U.S.C. § 1231. *See* Dkt. 11 at 16 ¶ 53. Under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), six months is a "presumptively reasonable" period of detention to effectuate removal. After six months, a detained noncitizen may seek release by demonstrating that his removal is not likely to occur in the reasonably foreseeable future. *Id.* at 699-700.

9

Here, Petitioner has been detained in DHS custody since December 8, 2025. Dkt. 11 at 3 ¶ 4. Even considering the additional seven weeks of detention after his removal order was finalized, *see* Dkt. 6-1 at 3, Petitioner has not yet exceeded the six-month "presumptively reasonable" period of detention. Nor has he shown good reason to believe that he will not be removed in the reasonably foreseeable future. For these reasons, his due process claim based on prolonged detention is unlikely to succeed on the merits.

Second, Petitioner fails to demonstrate irreparable harm absent injunctive relief. The Supreme Court has recognized that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). And such detention necessarily requires compliance with policies and procedures of prison administration. Further, any harm Petitioner would supposedly suffer if this Court does not stay his removal or transfer absent 72 hours' notice, or provide additional telephone access, is speculative and, therefore, insufficient to warrant injunctive relief. *See Pablo v. Warden of Fla. Soft Side S.*, No. 2:26-CV-261-KCD-DNF, 2026 WL 507703, at *3 (M.D. Fla. Feb. 24, 2026) ("The Court cannot enjoin a removal it has no statutory jurisdiction to stop, nor will it micromanage the Government's detention logistics to prevent transfers or force [the petitioner's] return . . . based on hypothetical harms he has entirely failed to prove").

Lastly, The balance of equities and public interest favor Respondents. The "Government's interest in the enforcement of immigration laws is considerable."

10

*Huanga v. Decker*, 599 F. Supp. 3d 131, 145 (S.D.N.Y. 2022). More specifically, Respondents have an interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Regarding "the public interest at stake, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest." *Harper v. Cuomo*, No. 9:21-CV-0019 (LEK/ML), 2021 WL 1821362, at *17 (N.D.N.Y. Mar. 1, 2021), report and recommendation adopted, No. 9:21-CV-0019 (LEK/ML), 2021 WL 1540483 (N.D.N.Y. Apr. 20, 2021) (internal citation and quotation marks omitted). *See also Roman v. Wolf*, 977 F.3d 935, 946 (9th Cir. 2020) ("the district court should, to the extent possible, avoid . . . wad[ing] into facility administration at a granular level beyond what is required to remedy the constitutional violation identified").

## CONCLUSION

For the reasons above, the Court DENIES Plaintiffs' motion for a preliminary injunction.

SO ORDERED.

Dated:     April 9, 2026
           Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

11