UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FARDIN SHARIFIPOUR,

        Petitioner,

        -v-

U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,
MARKWAYNE MULLIN, *in his official capacity*
*as Secretary, U.S. Department of Homeland Security,*
DAVID J. VENTURELLA, *in his official capacity as*
*Acting Director, U.S. Immigration and Customs Enforcement*,
JOSEPH E. FREDEN, *in his official capacity as ICE*
*Deputy Field Office Director, Buffalo Federal Detention Facility*;
PHILIP L. RHONEY, *in his official capacity as Acting*
*Deputy Field Office Director, Buffalo Field Office*,
*U.S. Immigration and Customs Enforcement*;
TAMMY MARICH, *in her official capacity as Acting*
*Deputy Field Office Director, Buffalo Field Office, U.S.*
*Immigration and Customs Enforcement*,

        Respondents.*

_____

26-CV-457-RCW

DECISION & ORDER

Petitioner Fardin Sharifipour is currently detained in the custody of the

United States Department of Homeland Security ("DHS"), Immigration and

---

\* Under Federal Rule of Civil Procedure 25(d), Acting Director Venturella is automatically substituted for former Acting Director of ICE Todd Lyons.  The Clerk of the Court is respectfully directed to update the case caption accordingly.

Customs Enforcement ("ICE"), at the Miami Correctional Facility ("MCF") in Bunker Hill, Indiana.[1]  Before this Court is Sharifipour's amended petition for relief under 28 U.S.C. § 2241 on the grounds that his detention violates 8 U.S.C. § 1231(a)(6) and the Fifth Amendment, as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Am. Pet. at 15.

Respondents—DHS, ICE, DHS Secretary Markwayne Mullin, ICE Acting Director David J. Venturella, ICE Deputy Field Office Director of the Buffalo Federal Detention Facility Joseph E. Freden, Acting Deputy Field Office Director of ICE's Buffalo Field Office Philip L. Rhoney, and Acting Deputy Field Office Director of ICE's Buffalo Field Office Tammy Marich (collectively, "the Government")—answered the amended petition, arguing that Sharifipour is not entitled to release under *Zadvydas*.

For the reasons below, this Court grants the amended petition.

---

[1] When he filed his original petition on March 12, 2026, Sharifipour was detained in the Western District of New York at the Buffalo Federal Detention Facility in Batavia, New York, Pet. at ¶ 1; he was transferred to MCF on March 13, 2026, Am. Pet. at ¶¶ 5, 39.  The Government "do[es] not dispute that venue is proper" here.  Ans. at ¶ 2.

## BACKGROUND[2]

### I.    Factual Background

Sharifipour is a citizen and national of Afghanistan.  Am. Pet. at ¶ 1; Ans. at ¶ 3.  He came to the United States in the 1980s when he was eight years old; he grew up and "built a life in the United States," eventually marrying a U.S. citizen and starting a family.  Am. Pet. at 7 & ¶ 24 (bold omitted).  In 2002, immigration authorities informed Sharifipour that he "was not authorized to be in the United States."[3]  *Id.* at ¶ 24.  Later the same year, an immigration judge ("IJ") ordered Sharifipour removed but granted him withholding of removal under the Immigration and Nationality Act ("INA").  *Id.* at ¶ 25; Thomas Decl. at ¶ 4.

In 2005, Sharifipour was convicted in New York State Supreme Court, Albany County, for grand larceny in the fourth degree and criminal possession of a forged instrument in the second degree; he served several years' imprisonment.

---

[2] The following facts—which are undisputed—are taken from the amended petition, the Government's answer, and the exhibits attached to the answer: a declaration from ICE Deportation Officer Akilah Thomas ("Thomas Decl.") and records from Sharifipour's immigration proceedings ("Gov't's Ex.").  *See* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."); *see also Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025) (stating that court may adjudicate habeas petition without a hearing when "only issues of law" are presented (quoting 28 U.S.C. § 2243)).

[3] More specifically, Sharifipour alleges that in 2002, "the [G]overnment told him that he was not included in the papers that his parents and grandparents had filed" and that "they no longer had those documents."  Am. Pet. at ¶ 24.

Gov't's Ex. at 4; Am. Pet. at ¶ 26.  While he was incarcerated, DHS moved to reopen his removal proceedings to terminate withholding of removal in light of his criminal convictions, and an IJ reopened Sharifipour's immigration case.  Gov't's Ex. at 3–4, 9–10; Am. Pet. at ¶ 27.  In May 2008, while those proceedings were ongoing, Sharifipour was released from state custody and taken into ICE custody. Thomas Decl. at ¶ 7; Am. Pet. at ¶ 26.

On February 26, 2009, an IJ terminated withholding of removal and ordered Sharifipour removed to Afghanistan.   Am. Pet. at ¶ 27; Gov't's Ex. at 12. Sharifipour did not appeal, and he remained detained in ICE custody for seven weeks after his removal order was entered.  Am. Pet. at ¶¶ 27–28.  Then, on April 7, 2009, the Government released him from custody under an order of supervision because—as Sharifipour states and the Government does not dispute—"the [G]overnment concluded that it would not be able to remove him to Afghanistan" and that he "was not a danger to the community nor a flight risk," Am. Pet. at ¶ 28; *see* Ans. at ¶ 4.  Following his release, Sharifipour "rejoined his family and . . . community" and started "a successful pizza shop."  Am. Pet. at ¶ 29.

In 2015, Sharifipour "was convicted of nonviolent criminal activity" and served another prison sentence, which he completed in 2021.[4]  *Id.* at ¶¶ 29–30. Upon his release, "immigration authorities told [Sharifipour] that they would not detain him because they still were not able to obtain travel documents."  *Id.* at ¶ 30. He thus remained released under an order of supervision and on February 22, 2023, "was issued a new [o]rder of [s]upervision."  Thomas Decl. at ¶ 10; Gov't's Ex. at 14–19.  Since his release from prison in 2021, Sharifipour has "complied with all conditions of his release, including periodic check-ins with ICE," which he attended without fail "every few months."  Am. Pet. at ¶ 31.

On October 10, 2025, Sharifipour attended a scheduled check-in with ICE and was told "to check in again on February 10, 2026."  *Id.* at ¶ 32.  But on December 8, 2025, ICE agents arrested him after he dropped his granddaughter off at her bus stop.  *Id.* at ¶ 33.  He was taken to "the county jail" and then to the Buffalo Federal Detention Facility, where he was detained for approximately three months.  *Id.* at ¶ 5.  Sharifipour "was not given a single document detailing the reasons that he had been detained" and was told only that the Government was

---

[4] Neither Sharifipour nor the Government provide any further details about Sharifipour's conviction.

"going to try to get travel documents." *Id.* at ¶¶ 34, 37.  On March 13, 2026, he was transferred to MCF, where he remains to this day.  *See id.* at ¶ 5; Ans. at ¶ 5.

## II.   Procedural History

On March 12, 2026, Sharifipour filed this action.  His initial petition asserted thirteen counts, arguing that the revocation of his supervised release and ongoing detention violated, among other things, the Fourth and Fifth Amendments, the Administrative Procedure Act ("APA"), and the INA.  Pet. at 31–45.  Sharifipour also moved for a preliminary injunction requiring the Government to (1) "provide [Sharifipour's] counsel with 72 business hours' notice" before transferring him and (2) "facilitate [Sharifipour's] access to three legal calls per week" while this action was pending.  Mot. for Prelim. Inj. at 1.  A judge of this Court, to whom this case was then assigned, denied Sharifipour's motion for a preliminary injunction.

Shortly before that decision, Sharifipour amended his petition, narrowing thirteen counts to one.  His sole remaining claim is that his ongoing detention violates 8 U.S.C. § 1231(a)(6) and the Fifth Amendment's Due Process Clause as set forth in *Zadvydas*; he asks this Court to order his immediate release.[5]  Am. Pet. at 15, 18.  The Government answered the amended petition, including with its

---

[5] Sharifipour also seeks a declaratory judgment that his detention violates section 1231(a)(6) and the Fifth Amendment's Due Process Clause.  Am. Pet. at 18.

6

answer a memorandum of law ("Gov't's Memo.") and several exhibits. Sharifipour then replied.[6]

## STANDARD OF REVIEW

"A district court may grant a writ of habeas corpus [under 28 U.S.C. § 2241] when a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Kapoor v. DeMarco*, 132 F.4th 595, 606 (2d Cir.) (quoting 28 U.S.C. § 2241(c)(3)), *cert. denied*, 146 S. Ct. 325 (2025). In habeas proceedings under section 2241, "the petitioner . . . bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## DISCUSSION

### I.   Subject Matter Jurisdiction

In its answer, the Government states that it "does not dispute that this Court has subject matter jurisdiction over [Sharifipour's] challenge to his continued detention." Ans. at ¶ 1. But in the answer's supporting memorandum, the Government says the opposite, arguing that "this Court lacks jurisdiction to hear

---

[6] In May 2026, while the parties were briefing the amended petition, the case was transferred to this Court.

7

this case" under section 1252(g), because "[t]his case arises out of the execution of [Sharifipour's] removal order."[7]  Gov't's Memo. at 6–7.

This Court agrees with the Government's initial position.  Sharifipour's amended petition—the operative pleading—raises only a single *Zadvydas* claim: a claim that the Government lacks the constitutional and statutory authority to detain him, not a challenge to the Government's execution of his removal order. It is clear that district courts have jurisdiction over such a claim.  *See Zadvydas*, 533 U.S. at 687–88, 699–701; *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) ("Section 1252(g) 'does not preclude jurisdiction over . . . challenges to the legality of a noncitizen's detention.'" (alteration omitted) (quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023))); *Zhang v. Genalo*, 814 F. Supp. 3d 307, 319–20 (E.D.N.Y. 2025) (collecting district court cases in this Circuit holding that "the jurisdiction-stripping provisions of [section 1252] do not apply to petitioners . . .

---

[7] Perhaps the Government—somehow overlooking the fact that Sharifipour abandoned all but his *Zadvydas* claim in his amended petition—intends to challenge jurisdiction only as to the non-*Zadvydas* claims raised in his original petition.  The Court notes that the Government's jurisdictional argument does not refer to *Zadvydas* at all and follows the section of the memorandum arguing that Sharifipour "has not . . . establish[ed] his entitlement to release" under that decision.  Govt.'s Memo. at 4 (bold and capitalization omitted); *see also id.* at 8 (arguing that Sharifipour's "claims under the [APA] are barred by the jurisdiction-stripping provisions discussed [previously]").  Regardless, this Court has jurisdiction for the reasons explained.

who challenge the lawfulness of their detention following revocation of an [order

of supervision]").  On to the merits.

## II.   *Zadvydas* Claim

### A.   Statutory Framework

Under the INA, a noncitizen who is "ordered removed" must be detained

during a 90-day "removal period."  8 U.S.C. § 1231(a)(1)(A), (2)(A).  Section 1231

defines the "removal period" as beginning "on the latest of" three dates:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of
the removal . . . , the date of the court's final order.

(iii) If the [noncitizen] is detained or confined (except under an immigration
process), the date the [noncitizen] is released from detention or confinement.

*Id.* § 1231(a)(1)(B).  Section 1231 also authorizes the Government to detain certain

individuals beyond the 90-day removal period.  *See id.* § 1231(a)(6).  Those subject

to further detention include noncitizens who are "removable as the result of . . .

violations of criminal law" or else are "determined by the Attorney General to be

a risk to the community[] or to be unlikely to comply with the order of removal."

*Dong v. Charles*, No. 26-CV-85, 2026 WL 1473790, at *3 (W.D.N.Y. May 26, 2026)

9

(quoting *Zhu v. Genalo*, 798 F. Supp. 3d 400, 407 (S.D.N.Y. 2025)); *see* 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) "places no explicit temporal limit on [the] detention" of those removable noncitizens who may be detained beyond the 90-day removal period. *Black v. Decker*, 103 F.4th 133, 143 n.13 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026). But in *Zadvydas*, the Supreme Court "read an implicit limitation into" section 1231(a)(6), holding that the section, "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." 533 U.S. at 689. The statute did not, the Court held, "permit indefinite detention"; interpreting it to do so "would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause—particularly because removal proceedings are "civil, not criminal." *Id.* at 689–90.

Under *Zadvydas*, because noncitizens may be detained under section 1231(a)(6) for only the period necessary to allow the government to effect their removal, they may not be detained once removal is no longer "reasonably foreseeable." *Id.* at 699–700. "This 'reasonably foreseeable' standard governs both

10

whether continued detention is statutorily authorized and whether it is constitutional." *Zheng v. Decker*, 618 F. App'x 26, 27 (2d Cir. 2015) (summary order). "[F]or the sake of uniform administration in the federal courts," the Supreme Court held that a six-month period of detention was "presumptively reasonable." *Zadvydas*, 320 F.3d at 701. After the expiration of that period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to "rebut" that showing with adequate "evidence." *Id.* If the noncitizen satisfies that initial burden and the government cannot rebut it, "the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

## B. Application

Here, the parties agree that Sharifipour is subject to a final order of removal and that he is being detained under section 1231(a)(6).[8] Am. Pet. at ¶¶ 27, 53; Ans.

---

[8] Because Sharifipour was detained as the result of a criminal conviction following the date when his 2009 removal order became administratively final, the removal period arguably restarted upon his release from detention in 2021. *See* 8 U.S.C. § 1231(a)(1)(B)(iii). The parties, however, do not address this point, and because it does not affect the disposition of this matter—it is undisputed, after all, that Sharifipour's current detention had lasted more than the 90-day removal period when he filed this action on March 12, 2026 and certainly when he amended his petition several weeks later—this Court need not linger upon it.

at ¶ 3; Gov't's Memo. at 3.  Thus, under *Zadvydas*, Sharifipour's entitlement to release turns on: (1) whether his detention is "presumptively reasonable," and if it is not, (2) whether his removal is "reasonably foreseeable."  533 U.S. at 701.

> 1.    *Whether Sharifipour's Detention is Presumptively Reasonable*

The Government argues that when Sharifipour filed his amended petition, he had not been detained beyond the "presumptively reasonable six-month period established in *Zadvydas*," and that his *Zadvydas* claim should therefore be dismissed.  Gov't's Memo. at 5.  Sharifipour disagrees, arguing that the presumption does not apply to his case,[9] and even if it did, he can rebut it.  Pet.'s Rep. at 3–8.  He further contends that dismissing his petition as prematurely filed would be inappropriate, noting that—counting as of the time of his reply and aggregating his periods of post-removal-order detention—he has been detained for more than six months.  *Id.* at 4–5.

Ultimately, this Court need not resolve whether the presumption applies to cases like Sharifipour's or is rebutted in this case because it has already run.  *Pan v. Oddo*, No. 25-CV-265, 2025 WL 3960013, at *4 & n.2 (W.D. Pa. Dec. 1, 2025)

---

[9] More specifically, Sharifipour argues that the presumption does not apply when the Government re-detains noncitizens it previously released due to its inability to remove them.  Pet.'s Rep. at 3–4.  Alternatively, he argues that in such cases the six-month presumptively reasonable clock continues to run even during the period of release.  *Id.* at 4–5.

(declining to address argument that presumption ran from first period of detention because current detention exceeded six months at time of decision, regardless of length at time of filing), *report and recommendation adopted*, 2025 WL 3701296 (W.D. Pa. Dec. 21, 2025); *see Diakhate v. Casey*, No. 23-CV-6736, 2024 WL 4882264, at *7 (W.D.N.Y. Nov. 25, 2024) (resolving motion to dismiss petition based on length of detention at time of decision).

That is, although Sharifipour had not been detained under section 1231 for more than six months when he initiated this action, that is no longer so: As of the date of this decision, his present detention (i.e., his detention since his December 2025 arrest) has stretched to more than seven months. *See* Am. Pet. at ¶ 6. And because any presumptively reasonable period has now expired, judicial economy is best served by adjudicating the amended petition now, rather than dismissing it without prejudice as premature and requiring Sharifipour to re-file. *See Dong*, 2026 WL 1473790, at *4 n.5 ("Adding red tape to an already complicated system is needlessly inefficient—especially when a petitioner's freedom is at stake.").

### 2.    *Whether Sharifipour's Removal is Reasonably Foreseeable*

As explained above, to meet the initial burden under *Zadvydas*, a petitioner must "provide[] good reason to believe that there is no significant likelihood of

removal in the reasonably foreseeable future." 533 U.S. at 701. That requires the petitioner to "present more than 'mere assertions that removal is unforeseeable.'" *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017) (quoting *Juma v. Mukasey*, No. 09-CV-3122, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009)). Nonetheless, the "good reason to believe" standard is "not a very high bar." *Dong*, 2026 WL 1473790, at *5 (quoting *Sahin v. Casey*, No. 26-CV-1078, 2026 WL 800558, at *2 (S.D. Cal. Mar. 23, 2026)). A petitioner does not need to conclusively demonstrate that there is "no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite"; "something less" is enough. *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (internal quotation marks and citation omitted).

Sharifipour's most recent final order of removal was entered in February 2009. Am. Pet. at ¶ 3; Ans. at ¶ 3. But in April 2009, the Government "concluded that it would not be able to remove him to Afghanistan" and released him on an order of supervision. Am. Pet. at ¶ 28; *see* Ans. at ¶ 4; Thomas Decl. at ¶ 9. After Sharifipour was convicted of additional criminal activity in 2015 and released from custody in 2021, the Government reached the same conclusion, declining to detain him because it was "still . . . not able to obtain travel documents" to effectuate his

14

removal. *Id.* at ¶ 30. In fact, the Government issued Sharifipour a new order of supervision in 2023. Thomas Decl. at ¶ 10. Finally, Sharifipour's verified amended petition alleges—and the Government does not dispute—that during and since his December 2025 arrest, various Government officials have told him that his removal is "not imminent" and that they are "unable to obtain travel documents because they have not had success reaching out to an Afghan embassy." Am. Pet. at ¶¶ 9, 40–42.

The Government argues that Sharifipour has failed to meet his initial burden under *Zadvydas* because he was detained relatively recently and "the period of detention at issue here is hardly indicative that there is no likelihood of removal in the reasonably foreseeable future." Gov't's Memo. at 5. It is, of course, true, that the passage of time alone does not satisfy a petitioner's initial burden under *Zadvydas*, and even lengthy detentions may be permissible if removal remains reasonably foreseeable. *See Kassama v. DHS*, 553 F. Supp. 2d 301, 306–07 (W.D.N.Y. 2008). But courts have held that a showing that the government failed to make *any* progress in deporting a detainee since it "first took him into custody"—combined with "the passage of time"—is "sufficient to meet [the petitioner's] initial burden." *Senor*, 401 F. Supp. 3d at 430 (internal quotation

15

marks and citation omitted).  That is what Sharifipour points to here: not just to the passage of time but to the Government's own actions and representations over the years showing that it is unable to remove him.  Am. Pet. at ¶¶ 9, 28, 30, 37, 40–42; *see* Thomas Decl. at ¶¶ 9–10.

Sharifipour "was ordered removed over [17] years ago, and yet there is nothing in the record suggesting that the government is any closer to accomplishing that task than it was [then]." *Lema v. Rhoney*, No. 26-CV-6020, 2026 WL 380402, at *2 (W.D.N.Y. Feb. 11, 2026) (holding that petitioner had satisfied initial burden under *Zadvydas* based on government's failure to make any apparent progress in *seven* years since final removal order).  That lack of apparent progress over 17 years is surely enough to satisfy Sharifipour's initial burden under *Zadvydas* of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[10]  533 U.S. at 701; *Lin v. Warden, Orange Cnty. Jail*, No. 25-CV-9039, 2026 WL 412115, at *3 (S.D.N.Y. Feb. 13, 2026) (petitioner satisfied initial *Zadvydas* burden by demonstrating that his

---

[10] Just last month, a district court in the District of Maryland reached the same conclusion in a case involving an Afghan citizen who was ordered removed in 2012, released the same year on an order of supervision, and re-detained more than a decade later in 2025. *Nawabi v. Trump*, No. CV 25-3831, 2026 WL 1584489, at *1, *10–11 (D. Md. June 3, 2026).  The court held that the petitioner had met his initial burden under *Zadvydas* by "present[ing] a long history of Respondents' inability to effectuate his removal to Afghanistan."  *Id.* at *11.

home county has refused to accept him and that he was previously released on order of supervision because he could not be deported).

Sharifipour has met his burden; the Government now bears the burden of rebutting Sharifipour's showing. *Zadvydas*, 533 U.S. at 701. To do so, the Government must show more than "[a] remote possibility of [his] eventual removal." *Escalante v. Noem*, No. 25-CV-182, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025).

The Government's efforts come up short. The record contains no indication that anything has changed to alter the Government's conclusion—in 2009, in 2021, in 2023, or in 2025—that Sharifipour's removal is not reasonably foreseeable. The Government offers a declaration stating that "Afghanistan currently requires a transportation letter to be issued before accepting the return of its citizens" and that "ICE is working to obtain a transportation letter that would allow for Petitioner's removal to Afghanistan." *See* Thomas Decl. at ¶ 12; *see also* Am. Pet. at ¶ 9. But it provides no details about the process of obtaining "transportation letters" from Afghanistan, what other steps are required, any particular efforts it has made or intends to make in Sharifipour's case, or the likelihood of success of any such measures. *Cf. Lin*, 2026 WL 412115, at *3 (government rebutted

17

petitioner's showing by providing evidence about country's recent history of accepting removed noncitizens in general and likelihood of accepting petitioner in particular).

Thus, the Government has failed to offer evidence rebutting Sharifipour's showing that his removal is not reasonably foreseeable. *See Lema*, 2026 WL 380402, at *2 (holding that ICE deportation officer's "cryptic[] state[ment that] 'DHS is actively working with the Department of State on avenues to remove [p]etitioner to a third country'" was "inadequate to rebut [petitioner's] showing under *Zadvydas*"); *Escalante*, 2025 WL 2206113, at *4 (stating that respondents' "conclusory statements that they are taking steps to remove [p]etitioner" were not sufficient to rebut petitioner's showing under *Zadvydas*).

In sum, because Sharifipour has showed that his removal is not reasonably foreseeable, and the Government has failed to rebut that showing, this Court concludes that "there is no significant likelihood of [Sharifipour's] removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. His continued detention therefore is neither statutorily nor constitutionally permissible, and he is entitled to release. *See Dong*, 2026 WL 1473790, at *6.

18

## CONCLUSION

For the reasons above, this Court GRANTS Sharifipour's amended petition.

**Within 24 hours of the issuance of this order**, the Government shall release

Sharifipour from custody.[11]  The Government shall certify compliance with this

order **within three days of the date of this order**.

SO ORDERED.


Dated:              July 10, 2026


Hon. Richard C. Wesley
Senior Circuit Judge of the U.S. Court of
Appeals for the Second Circuit, sitting by
designation

---

[11] In releasing Sharifipour, the Government may impose "any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 700.  This Court declines to grant Sharifipour's request in his reply to order his release "without restraints on his liberty beyond those that existed prior to his unlawful detention," Pet.'s Rep. at 10, because this request was not included in the amended petition and asks this Court to rule on nothing more than speculation.